# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# FLORENCE DIVISION

| | |
|---|---|
| VERA MCKELLEY, individually and on behalf of all others similarly situated,<br><br>      Plaintiff,<br><br>vs.<br><br>VORNADO AIR, LLC.<br><br>      Defendant. | Civil Action No.: _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Vera McKelley, ("Plaintiff"), individually and on behalf of all others similarly situated, respectfully submits the following Class Action Complaint against Defendant Vornado Air, LLC. ("Vornado" or "Defendant"). Plaintiff makes the following allegations, except as to allegations specifically pertaining to Plaintiff, upon information and belief based on, among other things, the investigation of counsel, and review of public documents.

## PRELIMINARY STATEMENT

1. When a manufacturer sells a product, it has a duty to ensure that the product functions properly and safely for its advertised use and is free from defects. When a manufacturer discovers a defect, it must explicitly disclose the defect and make it right or cease selling the product. When a product manufacturer provides a warranty, it must stand by that warranty. This case arises from Defendant's breach of its duties and warranties.

2. Plaintiff brings this action on behalf of herself, and all other similarly situated persons who purchased any of the following models of Vornado Steamfast brand Home and Away Travel Steam Irons [1] ("Recalled Irons", "Class Irons", or "Irons"):

- SF-717;
- SF-720; and
- SF-727

3. This action is brought to remedy various violations of law in connection with Defendant's manufacturing, marketing, advertising, selling, and warranting of the Recalled Irons.

4. Specifically, the power cords of these Recalled Irons can become damaged near the cord bushing, which can lead to overheating of the cord, posing fire and burn hazards ("the Defect"). In addition, cord damage near the bushing can result in exposed copper wires, posing a shock hazard.[2]

5. On December 14, 2023, Vornado recalled nearly 1.75 million of the above referenced Recalled Irons.[3]

6. This was not the first instance of issues with these Recalled Irons, as about 275,000 Steamfast Home & Away Travel Steam Irons manufactured before March 2017 were previously recalled in April 2023.[4]

7. The allegations herein are based on personal knowledge as to Plaintiff's own experience and are made as to other matters based on an investigation by counsel, including analysis of publicly available information.

---

[1] https://www.cpsc.gov/Recalls/2024/Vornado-Expands-Recall-to-Include-Additional-1-75-Million-Steamfast-Travel-Steam-Irons-Due-to-Fire-Burn-and-Shock-Hazards (last accessed December 27, 2023)
[2] *Id.*
[3] *Id.*
[4] *Id.*

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action under the Class Action Fairness Act, the relevant portion of which is codified at 28 U.S.C. §1332(d). The aggregated claims of the individual Class members exceed the sum or value of $5,000,000, exclusive of interests and costs, and this is a class action in which more than two-thirds of the proposed Plaintiff class, on the one hand, and Defendant, on the other, are citizens of different states.

9. This Court has personal jurisdiction over Defendant Vornado because Defendant Vornado has purposefully availed itself to this District's jurisdiction and authority, given Defendant's minimum contacts within this District through Defendant's extensive marketing, advertising, and sale of items throughout this District.

10. Venue is proper in this District under 28 U.S.C. §1391 because a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in this District. The Defendant sells and distributes its Irons throughout the United States and within this District.

## PARTIES

11. Vera McKelley is a citizen of the State of South Carolina and resides in Myrtle Beach, South Carolina. Myrtle Beach is located within Horry County, South Carolina.

12. Defendant Vornado Air, LLC is a Delaware corporation with its principal place of business in Andover, Kansas. Vornado's principal place of business is 415 E 13th St Andover, KS 67002.

13. Defendant designs, manufactures, markets, distributes, services, repairs, and sells steam Irons, including the Recalled Irons, nationwide. Defendant is the warrantor and distributor of the Recalled Irons in the United States.

14.     Defendant, through various entities, markets, distributes, warrants, and sells Irons, including the Recalled Irons, in multiple locations across the United States.

## FACTUAL ALLEGATIONS

15.     In July of 2023, Plaintiff purchased her SF-727 Steamfast Iron online from Amazon.com.

16.     Plaintiff's Iron has a model number that is included within Defendant's Recall.[5]

17.     Based on Vornado's active and persistent promotions touting the quality of its Irons, Plaintiff considered Vornado a quality company with a strong reputation for producing reliable Irons.

18.     In addition to Vornado's reputation through its marketing and promotion, Plaintiff decided on the specific model because she believed it was a high-quality Iron.

19.     In fact, Vornado made many representations regarding the SF-727 including "This item is the perfect travel companion." and "The irons is environmentally safe and works on nearly all fabrics. With only a quick 15-second heat-up steam time, you can have your ironing needs completed in just a few short minutes."[6]

20.     Further, Vornado represented these products as "easy to use and great for quick touch-ups whether before a business meeting or a quick run to the store."[7]

21.     Plaintiff has never been informed of any recalls or defects related to her Iron by anyone affiliated with Vornado and has learned of the defects on social media.

---

[5] *Id.*
[6] https://1shopus.com/products/steamfast-sf727-travel-mini-steam-iron (Last visited December 27, 2023)
[7] *Id.*

4

22. Since January of 2009, Defendant has designed, manufactured, distributed, and sold the Recalled Irons. Defendant has sold, directly or indirectly, through dealers and other retail outlets, over 1,750,000 Recalled Irons nationwide.[8]

23. Mentioned earlier and discussed in more detail below, the Recalled Irons contain a design defect that causes a serious safety concern. The design defect with the Recalled Irons is contained in the power cord, specifically near the bushing. This Defect leads to a damaged cord bushing, which can lead to overheating of the cord, posing fire and burn hazards. Moreover, cord damage near the bushing can result in exposed copper wires, posing a serious shock hazard.

24. To date, Vornado has received a total of 74 reports of incidents, including 18 additional reports of the iron's power cord smoking, sparking, catching fire, or overheating at the power cord, or of the power cord becoming damaged, along with two reports of minor shocks.[9]

25. Assuming that the Recall was effective and offered a true resolution, Plaintiff is still burdened with an Iron that has been devalued by Defendant's actions because the value of an Iron with a known and dangerous defect is worth much less than an Iron with a properly working and safe electrical cord.

## CLASS ACTION ALLEGATIONS

26. Plaintiff brings this action on behalf of herself and as a class action, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the class and subclass are defined as follows:

**Nationwide Class:** All persons in the United States who purchased any recalled Vornado Iron from January 2009 to September 2023.

---

[8] https://www.cpsc.gov/Recalls/2024/Vornado-Expands-Recall-to-Include-Additional-1-75-Million-Steamfast-Travel-Steam-Irons-Due-to-Fire-Burn-and-Shock-Hazards (Last visited December 27, 2023).
[9] *Id*.

5

**South Carolina Subclass:** All persons from South Carolina who purchased any recalled Vornado Iron from January 2009 to September 2023.

27. Together, the Nationwide Class and South Carolina Subclass will be collectively referred to as the "Class" or "Classes." Members of these Classes will be referred to as "Class Members".

28. Plaintiff qualifies as a member of each of the proposed classes in the preceding paragraphs.

29. Excluded from each of the putative classes are any person who falls within the definitions if the person is (i) an employee or independent contractor of Defendant; (ii) a relative of an employee or independent contractor of Defendant; (iii) an employee of the Court where this action is pending.

30. The proposed class definitions in ¶ 26 as limited by ¶ 29 may be amended or modified from time to time.

31. The particular members of the (i) Nationwide Class, and (ii) South Carolina Subclass are capable of being described without difficult managerial or administrative problems. The members of the putative classes are also readily identifiable from the information and records in the possession or control of Defendant or its affiliates and agents and from public records.

32. Certification of Plaintiff's claims for class-wide treatment is appropriate because Plaintiff can prove the elements of her claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

33. The Proposed Classes are so numerous that the joinder of all members is impracticable.

34. This action has been brought and may be properly maintained on behalf of the Classes proposed herein under Federal Rule of Civil Procedure 23.

35. **Numerosity: Fed. R. Civ. P. 23(a)(1)** Upon information and belief, the Class is so numerous that the joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information is in the sole possession of Defendant and obtainable by Plaintiff only through the discovery process. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, Electronic Mail, internet postings, social media, and/or published notice.

36. **Typicality: Fed. R. Civ. P. 23(a)(3)** Plaintiff's claims are typical of the claims of the Class because Plaintiff purchased an Iron that contained the same power cord Defect found in all other Recalled Irons.

37. **Adequacy: Fed. R. Civ. P. 23(a)(4)** Plaintiff is an adequate Class representative because her interests do not conflict with the interests of the Class that she seeks to represent. Plaintiff has retained counsel competent and highly experienced in complex and class action litigation, and she intends to prosecute this action vigorously. The interests of the Classes will be fairly and adequately protected by Plaintiff and her counsel.

38. **Predominance and Superiority: Fed. R. Civ. P. 23(b)(3)** A class action is superior to all other available means for the fair and efficient adjudication of the claims of Plaintiff and Class Members, and questions of law and fact common to all Class Members predominate over questions affecting only individual class members. Class Members can be readily identified and notified based on, inter alia, Defendant's business records or other sources.

39. **Common Questions of Fact and Law: Fed. R. Civ. P. 23(b)(4)** Common Questions of law and fact exist as to all members of the Class. These questions predominate over

the questions affecting individual Class Members. These common legal and factual questions include, but are not limited to:

a. Whether the Vornado Irons designed and sold by Defendant possess a material defect;

b. Whether the Defect creates an unreasonable fire, burn, and shock risk;

c. Whether Defendant knew or should have known that the Vornado Irons possessed the Defect at the time of sale;

d. Whether Defendant omitted to disclose the Defect;

e. Whether Defendant concealed the Defect, once it knew of the defect;

f. Whether Defendant breached express warranties relating to the Vornado Irons;

g. Whether Defendant breached implied warranties of merchantability relating to the Vornado Irons;

h. Whether Defendant violated the Magnusson-Moss Warranty Act;

i. Whether Plaintiff and Class Members are entitled to damages;

j. Whether Plaintiff and Class Members are entitled to replacement or repair of their defective Vornado Irons;

k. Whether Plaintiff and Class Members are entitled to restitution of the purchase price they paid for their defective Vornado Irons; and

l. Whether Plaintiff and Class Members are entitled to other equitable relief, including an injunction requiring that Defendant engage in a corrective notice campaign and/or a recall.

## CAUSES OF ACTION
### COUNT I
### BREACH OF EXPRESS WARRANTY
**(On Behalf of Plaintiff and the Classes)**

40. Plaintiff incorporates paragraphs 1-39 as if fully set forth herein.

41. Plaintiff brings this count on behalf of herself and the Classes.

42. Plaintiff and other Class Members formed a contract with Defendant at the time they purchased their Recalled Irons. The terms of the contract include the promises and affirmations of fact and express warranties made by Defendant.

43. Under the UCC and SC Code § 36-2-313(1)(b), the terms of the contract include the promises and affirmations of fact made by Defendant on the Recalled Irons' packaging and through marketing and advertising, as described above.

44. This labeling, marketing, and advertising constitute express warranties and became part of the basis of the bargain and are part of the standardized contract between Plaintiff and the members of the Class and Defendant.

45. As set forth above, Defendant purports through its advertising, labeling, marketing, and packaging, to create an express warranty that the Recalled Irons are safe for their intended use.

46. Plaintiff and the members of the Class performed all conditions precedent to Defendant's liability under this contract when they purchased the Recalled Irons.

47. Defendant breached express warranties about the Recalled Irons and their qualities because Defendant's Recalled Irons contained defects and the Recalled Irons do not conform to Defendant's affirmations and promises described above.

48. Plaintiff and each of the members of the Class would not have purchased the Recalled Irons had they known the true nature of the Defect.

49. As a result of Defendant's breach of warranty, Plaintiff and Class Members suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest, and fees, including attorneys' fees, as allowed by law.

50. Plaintiff suffered injury through Defendants conduct in that she suffered economic loss and purchased an Iron that is now worthless and unsafe.

51. Plaintiff also suffered economic loss in reference to the value of her Iron.

## COUNT II
## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY
(On Behalf of Plaintiff and the Classes)

52. Plaintiff incorporates Paragraphs 1-39 as if fully set forth herein.

53. Plaintiff brings this count on behalf of herself and the Classes.

54. Defendant is a merchant and was at all relevant times involved in the distributing, warranting, and/or selling of the Recalled Irons.

55. The Recalled Irons are "goods" under the relevant laws, and Defendant knew or had reason to know of the specific use for which the Recalled Irons, as goods, were purchased.

56. Defendant entered into agreements with consumers to sell the Recalled Irons to be used by Plaintiff and Class Members for personal use.

57. The implied warranty of merchantability included with the sale of each Class Iron means that Defendant guaranteed that the Recalled Irons would be fit for the ordinary purposes for which Irons are used and sold and were not otherwise injurious to consumers. The implied warranty of merchantability is a critical part of the basis for the benefit of the bargain between Defendant, Plaintiff, and the Class Members.

58. Defendant breached the implied warranty of merchantability because the Recalled Irons are not fit for their ordinary purpose of safe steaming or ironing. After all, Defendant did not indicate that the Recalled Irons would contain a hazardous power cord Defect that could potentially result in personal injury.

59. Given that Plaintiff and Class Members are unable to safely use the Recalled Irons without risk of fire or injury, the Recalled Irons are not fit for their particular purpose of safe steaming and ironing.

60. Defendant's warranty expressly applies to the purchaser of the Recalled Irons, creating privity between Defendant and Plaintiff and Class Members.

61. Privity is not required because Plaintiff and Class Members are the intended beneficiaries of Defendant's warranties and sales. Defendant's warranties were designed for and intended to benefit the consumer only, including Plaintiff and Class Members.

62. Defendant had been provided sufficient notice of its breaches of implied warranties associated with the Recalled Irons. Defendant was put on actual notice of its breach through the contract between Plaintiff and Class Members and Defendant, and its review of consumer complaints as well as Defendant's own previous recall.

63. Had Plaintiff, Class Members, and the consuming public known that the Recalled Irons would not be provided with proper power cords, they would not have purchased the Recalled Irons or would have paid less for them. To reiterate, had Plaintiff and Class Members known of the power cord Defect, they would not have purchased the Recalled Irons.

64. As a direct and proximate result of the foregoing, Plaintiff and the Classes suffered and continue to suffer financial damage and injury, and are entitled to all damages, in addition to costs, interest, and fees, including attorneys' fees, as allowed by law.

65. Plaintiff suffered injury in that she purchased an Iron that is worthless. For all intents and purposes, Plaintiff's Iron is now a notoriously unsafe Iron known for dangerously defective power cords.

66. Plaintiff also suffered economic loss in reference to the value of her Iron. As a result of Defendant's Recall, Plaintiff's Iron's resale value is now diminished.

11

67. Plaintiff has suffered damages in that Plaintiff has been inconvenienced by Defendant's Recall and accompanying refund or replacement. Plaintiff did not bargain for, or pay for, an Iron with a hazardous power cord.

## COUNT III
### VIOLATION OF THE MAGNUSON MOSS WARRANTY ACT (15 U.S.C. § 2301 ET SEQ.)
**(On Behalf of Plaintiff and the Classes)**

68. Plaintiff incorporates Paragraphs 1-39 as if fully set forth herein.

69. Plaintiff brings this count on behalf of herself and the Classes.

70. Plaintiff is a "consumer" within the meaning of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 ET SEQ ("MMWA").

71. Defendant is a "supplier" and "warrantor" with the meaning of the MMWA.

72. The Recalled Irons are "consumer products" within the meaning of the MMWA.

73. 15 U.S.C. § 2301(d)(1) provides a cause of action for any consumer who is damaged by the failure of a warrantor to comply with a written or implied warranty.

74. Defendant's express warranties are written warranties within the meaning of the MMWA.

75. Defendant breached its warranties by offering for sale and selling the Class Irons, which were by design and construction defective and unsafe due to the Recall.

76. Defendant's actions subjected Plaintiff and the Class to danger as well as monetary damages in that the Recalled Irons are inherently worth less compared to their value had the Recalled Irons been free of the power cord Defect.

77. Additionally, Plaintiff and the Class Members suffered damages in that they have been greatly inconvenienced by this Recall.

78. Defendant has breached and continues to breach its written and implied warranties of safety and reliability, thereby damaging Plaintiff and the Classes, when the Irons fail to perform due to the Defect.

79. As a result of these breaches, Plaintiff and the Classes have suffered damages.

80. Plaintiff and the Classes seek full compensatory, punitive, and consequential damages as allowed by law, and any other relief to which Plaintiff and the Classes may be entitled.

81. Plaintiff and the Classes suffered injury through Defendant's conduct in that Plaintiff and the Classes are now owners of Irons that are worth significantly less, given the Defect and the notoriety therein.

### COUNT IV
### NEGLIGENT DESIGN DEFECT
**(On Behalf of Plaintiff and the Classes)**

82. Plaintiff incorporates Paragraphs 1-39 as if fully set forth herein.

83. Plaintiff brings this count on behalf of herself and the Classes.

84. Defendant owed Plaintiff and the Classes a duty to reasonably and safely design, manufacture, market, and sell the Recalled Irons.

85. Defendant breached this duty as the design and manufacture of the Recalled Irons were defective, which caused the Irons to not be fit or suitable for their intended purposes.

86. Additionally, Defendant's defective design caused monetary damages to Plaintiff and the Classes as the Recalled Irons now are worth less compared to the Class Iron's value prior to the existence of the Defect, given the notoriety of the Defect.

87. Defendant did not exercise due care in the production of the Recalled Irons. Defendant's design horribly malfunctions, and many other power cords in all sorts of similar Irons that exist do not have this Defect.

88. Plaintiff suffered injury through Defendant's conduct in that she suffered economic loss and purchased an Iron that is now worthless and unsafe.

89. The design of the Recalled Irons' defect is unacceptable as other Irons produced by other companies and manufacturers work properly and do not have this same defect. In fact, Defendant has produced other appliances with power cords that do not have defects similar to the Recalled Irons.

### COUNT V
### FRAUD BY OMISSION OR FRAUDULENT CONCEALMENT
(On Behalf of Herself and the Classes)

90. Plaintiff incorporates Paragraphs 1-39 as if fully set forth herein.

91. Plaintiff brings this count on behalf of herself and the Classes.

92. Defendant knew that the Recalled Irons suffered from an inherent defective power cord, were defectively designed and/or manufactured, and were not suitable for their intended use. Defendant designed, engineered, and produced the Recalled Irons, as such, they knew of the faulty design contained within the Recalled Irons as Defendant in fact created their own Defect.

93. Defendant concealed from and failed to disclose to Plaintiff and Class Members the defective nature of the Recalled Irons.

94. The fact that Defendant's Recalled Irons contained a power cord Defect is a material fact as the safe flow of electrical current is the most critical aspect to properly functioning Irons and any electrical devices for that matter.

95. Defendant was knowledgeable of the falsity of the safety of its power cords and/or recklessly disregarded the truth or falsity of the dangerous nature of the Defect.

96. Defendant intended for Plaintiff to act upon such falsity as part of Defendant's commercial operations to sell Irons.

97. Plaintiff and Class Members would not have purchased the Recalled Irons had they known of such Defect. Plaintiff and the Class did not know of such Defect and relied upon the false presentation of safety in their purchases of the Recalled Irons.

98. Plaintiff did not know, and could not have discovered the Defect, unless Plaintiff were to disassemble the Class Iron and inspect the power cord bushings throughout the Recalled Irons. This possibility exists outside of reality as it is highly improbable that any Iron retailer would allow for such intensive inspection.

99. Defendant was under a duty to Plaintiff and Class Members to disclose the defective nature of the Recalled Irons because:

   a. Defendant was in a superior position to know the true state of facts about the power cord Defect contained in the Recalled Irons;

   b. The omitted facts were material because they directly impact the safety of the Class Irons;

   c. Defendant knew the omitted facts regarding the defect were not known to or reasonably discoverable by Plaintiff and Class Members;

   d. Defendant actively concealed the defective nature of the Recalled Irons from Plaintiff and Class Members.

100. The facts concealed or not disclosed by Defendant to Plaintiff and the other Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease Defendant's Recalled Irons or pay a lesser price for them. Whether an Iron becomes dangerous and inoperable when the power cord fails is a material safety concern, given the inherent burn and fire risk with overheating electrical cords.

101. Had Plaintiff and Class Members known about the defective nature of the Recalled Irons, they would not have purchased the Recalled Irons or would have paid less for them.

102. Defendant concealed, or failed to disclose, the true nature of the design and/or manufacturing defects contained in the Recalled Irons to induce Plaintiff and Class Members to act thereon. Plaintiff and the other Class Members justifiably relied on Defendant's omissions to their detriment. This detriment is evident from Plaintiff's and Class Members' purchase of Defendant's defective Recalled Irons.

103. As a direct and proximate result of Defendant's misconduct, Plaintiff and Class Members have suffered and will continue to suffer actual damages. Plaintiffs and the Class reserve their right to elect either to (a) rescind their purchase of the Defective Irons and obtain restitution or (b) affirm their purchase of the Defective Irons and recover damages.

104. Defendant's acts were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiff's and the Class's rights and well-being to enrich Defendant. Defendant's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

105. Plaintiff suffered injury through Defendant's conduct in that she suffered economic loss and purchased an Iron that is now worthless and unsafe.

106. Plaintiff also suffered economic loss in reference to the value of her Iron. As a result of Defendant's Recall, Plaintiff's Iron is now worthless and unsafe.

**COUNT VI**
**UNJUST ENRICHMENT**
**(On Behalf of Herself and the Classes)**

107. Plaintiff incorporates paragraphs 1-39 as if fully set forth herein.

108. Plaintiff brings this count on behalf of herself and the Classes.

109. Plaintiff, and the other members of the Classes, conferred benefits on Defendant in the form of monies paid to purchase Defendant's worthless Recalled Irons.

110. Defendant voluntarily accepted and retained this benefit. Defendant has knowledge and appreciation of this benefit, which was conferred upon it by and at the expense of Plaintiff and the Class Members.

111. Because this benefit was obtained unlawfully, namely by selling and accepting compensation for the Recalled Irons without providing properly functioning power cords in the Recalled Irons, it would be unjust and inequitable for Defendant to retain the benefit without paying the value thereof.

112. The circumstances, as described herein, are such that it would be inequitable for Defendant to retain the ill-gotten benefit without paying the value thereof to Plaintiff and the Class Members.

113. Defendant manufactured, marketed, and sold the Recalled Irons under the guise of these Irons being safe and operable, without faulty power cords. Instead, Defendant sold Irons that were deadly fire hazards and burn risks, given the power cord issues.

114. Because Defendant's retention of the non-gratuitous benefits conferred on them by Plaintiff and members of the Classes is unjust and inequitable, Defendant must pay restitution to Plaintiff and members of the Classes for its unjust enrichment, as ordered by the Court.

**COUNT VII**
**NEGLIGENCE**
**(On Behalf of Herself and the Classes)**

139. Plaintiff incorporates paragraphs 1-39 as if fully set forth herein.

140. Plaintiff brings this count on behalf of herself and the Classes.

141. Defendant caused Recalled Irons to be sold, distributed, marketed, promoted, and/or used by Plaintiff and the Proposed Classes.

142. At all times relevant to this litigation, Defendant had a duty to exercise reasonable care in the design, research, marketing, advertisement, supply, promotion, packaging, sale, and distribution of Recalled Irons, including the duty to take all reasonable steps necessary to provide effective power cords in the Recalled Irons.

143. Defendant breached this duty by providing Recalled Irons with a power cord Defect. For some time, Defendant has produced other appliances without power cord Defects, which is evidence that Defendant did not exercise proper care in producing the Recalled Irons. Additionally, many other manufacturers produce Irons with effective power cords.

144. Accordingly, at all times relevant to this litigation, Defendant knew or, in the exercise of reasonable care, should have known that not providing safe power cords could cause or be associated with Plaintiff's and Class Members' injuries.

145. Defendant's alleged negligence included:

   a. Selling and/or distributing the Recalled Irons while negligently and/or intentionally failing to provide suitable power cords; and

   b. Systematically failing to provide consumers with safe and functional power cords in multiple states.

146. As a direct and proximate result of Defendant's negligence, Plaintiff and the Classes have suffered and will continue to suffer actual monetary damages.

147. But for Defendant's negligent design, production, and marketing of Recalled Irons, Plaintiff and the Classes would not be injured as they would not have purchased the worthless Recalled Irons.

148. Plaintiff's and Class Members' injuries were foreseeable as Defendant had received complaints from Plaintiff and Class Members regarding failure to provide a safe power cord in the Recalled Irons at the time of purchase of Defendant's Product.

149. Further, it is foreseeable that an Iron with a defective power cord would be worthless as it would be an incredibly dangerous Iron to use.

150. As a result of Defendant's breach, Plaintiff and the Classes were harmed in that they now own a useless Iron with a dangerous power cord given Defendant's confounding lack of due care in its design and product.

151. Plaintiff and the Class Members seek actual damages, attorney's fees, costs, and any other just and proper relief available.

152. Plaintiff suffered injury through Defendants conduct in that she suffered economic loss and purchased an Iron that is now worthless and unsafe.

153. Plaintiff also suffered economic loss in reference to the value of her Iron. As a result of Defendant's Recall, Plaintiff's Irons are worthless and unsafe.

154. Plaintiff also suffered damages in that Plaintiff and the Classes have been greatly inconvenienced by Defendant's Recall.

### PRAYER FOR RELIEF

**WHEREFORE**, the Plaintiff, on behalf of herself and members of the Classes, requests that the Court enter judgment in their favor and against Defendant, awarding as follows:

- A. Certifying the Class as proposed herein, designating Plaintiff as Class representative, and appointing undersigned counsel as Class Counsel;

- B. Declaring that Defendant is financially responsible for notifying the Proposed Classes Members of the pendency of this action;

C. Award all actual, general, special, incidental, statutory, and consequential damages to which Plaintiff and Class Members are entitled;

D. Scheduling a trial by jury in this action;

E. Awarding pre and post-judgment interest on any amounts awarded, as permitted by law;

F. Costs including reasonable attorneys' fees, court costs, and other litigation expenses; and,

G. Any other relief the Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Plaintiff, individually and on behalf of all those similarly situated, hereby requests a jury trial, pursuant to Federal Rule of Civil Procedure 38, on any and all claims so triable.

Dated: December 28, 2023

Respectfully Submitted,

/*s/ Blake G. Abbott*
Paul J. Doolittle (Fed ID #6012)
Blake G. Abbott  (Fed ID #13354)
**POULIN | WILLEY**
**ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
Tel: 803-222-2222
Fax: 843-494-5536
Email: paul.doolittle@poulinwilley.com
      blake.abbott@poulinwilley.com